UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| USANDIVARAS, | CASE NO. C18-889 MJP |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| EGGLESTON et al, | |
| Defendant. | |

THIS MATTER comes before the Court on the Defendants' Motion for Summary Judgment. (Dkt. No 21.) Having reviewed the Motion, the Response (Dkt. No. 27), the Reply (Dkt. No. 29), and all related papers, and having considered the statements of the parties at oral argument, the Court GRANTS Defendants' Motion.

**Background**

Plaintiff Javier Usandivaras owns several exotic sportscars that he regularly drives through his residential neighborhood of Kirkland, Washington. (Dkt. No. 23, Declaration of Jeremy W. Culumber ("Culumber Decl."), Ex. 1 at 6:9-11, 8:3-11:24.) On September 10, 2017, while Plaintiff was driving one of these cars down a local street, a neighbor, Robert Waggoner,

threw a newspaper in front of Plaintiff's car because he was upset about Plaintiff's driving. (Culmber Decl. Ex. 1 at 39:12-22, 43:3-16.)

Several days later, on September 14, 2017, while Plaintiff was driving his Lamborghini through the same neighborhood, Plaintiff heard Mr. Waggoner yell "stop it!"  (Id. at 51:22-24.) Plaintiff stopped in the middle of the street and pulled his loaded pistol out of his glove compartment.  (Id. at 51:17-18; Ex. 5.)  Mr. Waggoner approached Plaintiff's window and after briefly arguing with Plaintiff, looked down and asked, "are you waiving a gun at me?" Plaintiff replied, "Yes."  (Id. Ex. 4b at 00:01; Ex. 1 at 57:11-20.)

While Plaintiff drove home, Mr. Waggoner called the police, describing the argument and telling the officer that a man in a powder blue Lamborghini had "pointed [a gun] at him," although he later clarified that "the firearm was not pointed directly at him, but appeared to be at the ready."  (Dkt. No. 28, Declaration of Harry Williams ("Williams Decl."), Ex. 6 at 2.) Kirkland Police Officer Everett West went to speak with Mr. Waggoner while other units drove to Plaintiff's address.  (Id.)  After taking Mr. Waggoner's statement, Officer West radioed the officers at Plaintiff's house that there was probable cause to arrest Plaintiff "for brandishing," a violation of RCW 9.41.270 and a gross misdemeanor.  (Culmber Decl. Ex. 6 at 16:06:19.)

Over the next twenty minutes, Officers Garrett Lowell, Patrick Spak, Kyle Burbridge, and Sergeant Gary Eggleston joined Officer Brian Farman at Plaintiff's house.  (Id. at 15:55:46-16:14:02).  Sergeant Eggleston had Officer Lowell wait across the street to provide cover as the others waited in Plaintiff's driveway.  (Culmber Decl. Ex. 15 at 2.)

When Plaintiff got home he called the police station and was patched through to Officer West, who ordered Plaintiff to walk outside "with his hands in the air and visible."  (Williams Decl. Ex. 6 at 2.)  Plaintiff claims that Officer West also told him to bring his driver's license and

concealed pistol license; Sargent Eggleston, on the other hand, claims he told Officer West to instruct Plaintiff to "come outside with his hands empty." (Id. at 3; Ex. 1 at 69:10-14; Culumber Decl. Ex. 15 at 2.) After Officer West spoke with Plaintiff, he radioed the officers who were waiting outside his house, "SUBJ SHOULD BE COMING OUT W/ HANDS UP AND NO WEAPONS." (Id. at 16:31:55.) Plaintiff walked out of his house holding a black wallet in his right hand. (Culumber Decl. Ex. 1 at 68:20-23; Id. Ex. 15 at 2.)

Plaintiff testified that when he came out of his house, four of the officers were pointing their guns at him, three of the four in his driveway and Officer Lowell across the street. (Williams Decl. Ex. 1 at 109:19-24.) By contrast, only Officers Lowell and Farman claim to have had their weapons out, and then only at the "low ready" position, not pointed at Plaintiff. (Culumber Decl. Ex. 21 at 41:15-18, 45:20-22; Ex. 22 at 27:13-25, 28:20-22.)

Once Plaintiff walked down the steps from his porch, Sergeant Eggleston ordered him to turn around and lie facedown on the ground, where he was handcuffed. (Williams Decl. Ex. 1 at 113:4-16.) Plaintiff "followed the commands he was given" and was cooperative as he lowered himself to the ground without any officer intervention. (Id. Ex. 7 at 20:1-10.) Then, while the officers helped Plaintiff stand, he yelled "'I am disabled. Be careful with my leg'" but claims the officers ignored him by not working with him "on a more comfortable way to stand [] up." (Id. at 117:21-22, 118:14-19.) After Plaintiff was handcuffed, the officers searched him and found no weapons. (Culumber Decl. Ex. 15 at 2-3.) His gun was later found in the glove compartment of his Lamborghini. (Id.)

Plaintiff brought a single claim under 42 U.S.C. § 1983, alleging that Defendants Eggleston, Farman, Spak, and Burbridge used excessive force during the arrest, in violation of the Fourth Amendment. (Dkt. No. 19.) Defendants now move the Court for summary judgment.

**Discussion**

## I.    Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255. After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." <u>Id</u>. at 250.

Defendants make two principle arguments in support of their Motion for Summary Judgment: (1) that Plaintiff's evidence—primarily his deposition testimony—is insufficient to support his claim (Dkt. No. 21 at 9-18); and (2) even taking the evidence in the light most favorable to Plaintiff, Defendants are entitled to qualified immunity (<u>Id.</u> at 18-21). The Court evaluates each of these arguments in turn.

## II.    Insufficient Evidence

To establish Section 1983 liability, Plaintiff must demonstrate that each defendant either engaged in excessive force or performed functions that were "integral" to the excessive force, even if their individual actions do not themselves rise to the level of a constitutional violation. <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 481 (9th Cir. 2007); <u>Bravo v. City of Santa Maria</u>,

665 F.3d 1076, 1089-90 (9th Cir. 2011); Chuman v. Wright, 76 F.3d 292, 295 (9th Cir. 1996).

The Court is required to "scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit 'a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy.'" O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1466-67 (9th Cir.1986).  Reviewing Plaintiff's claims against each officer, the Court finds that Plaintiff has not met this burden.

### 1. Handcuffing

First, Plaintiff contends the officers used excessive force while handcuffing him and pulling him back up to a standing position.  (Culumber Decl. Ex. 1 at 117:3-25.)  Claims of excessive force under Section 1983 are only cognizable where Plaintiff has demonstrated an "injury or specific facts that would show more than de minimis discomfort."  Gonzalez v. Pierce Cty., a municipal corporation, No. C04-5303RJB, 2005 WL 2088367, at *9 (W.D. Wash. Aug. 29, 2005).  Plaintiff's vague assertion that following his arrest he "was in pain for the subsequent several weeks," without more, is insufficient to establish excessive force.  (Williams Decl., Ex. 1 at 121:14-15.)  This is especially so considering Plaintiff's repeated testimony that none of the complained-of actions caused him "permanent injury."  (Culumber Decl., Ex. 1 at 116:6-21, 118:5-6, 119:6-8.)

### 2. Pointing Weapons

Plaintiff similarly provides insufficient support for his central allegation that when he left his house, "three or four officers" standing in a line to his left "point[ed] guns at him," and one officer pointed a pistol at him while he was being handcuffed on the ground.  (Dkt. No. 19, ("FAC") at ¶ 17.)  When scrutinizing the evidence, the Court finds Plaintiff has not provided

probative evidence upon which a reasonable juror could find individual liability.  Blankenhorn, 485 F.3d at 481; Bravo, 665 F.3d at 1089-90; Chuman, 76 F.3d at 295.

To begin, Plaintiff concedes that Sargent Eggleston, the officer holding a ballistic shield and standing in front of the three other Defendants, did not point a gun at Plaintiff during the arrest.  (Williams Decl. Ex. 1 at 110:3-20; Culumber Decl. Ex. 1 at 110:3-5.)  For each of the other officers, Plaintiff has not provided a single identifying feature—what the officers looked like, where they stood in line, or even the type of weapons they held—that would allow a reasonable juror to conclude the officers pointed their weapons at Plaintiff in the manner he describes.  Instead, Plaintiff testified all the Defendants "looked the same to [him]" (Id. at 110:24-25), he does not "know how they approached [him]" (Id. at 112:23-113:3), and when asked to identify what types of guns the officers were holding, Plaintiff replies, "I don't know" (Id. at 112:4-6), he does not have "any idea" (Id. at 112:10-12), or the officer had "some gun," "whatever it was."  (Id. at 111:4-5; 111:18-19).

Plaintiff accuses one officer of pointing a "handgun" or "pistol" at him while Plaintiff was handcuffed with his head turned to the left, but through a process of elimination based on the unchallenged testimony of the other officers and Plaintiff's own testimony—the third and fourth officers in line were handcuffing Plaintiff on his right side (Culumber Decl. Ex. 10 at 16:2-22; Williams Decl. Ex. 10 at 33:9-11), and Plaintiff testified Sargent Eggleston remained behind the shield (Culumber Decl., Ex. 1 at 115:8-23)—the only officer left was Officer Farman, who testified he was holding a rifle during the arrest.  (Williams Decl. Ex. 1 at 111:8-9; Ex. 8 at 37:1-3; Ex. 9 at 38:20-22; Culumber Decl. Ex. 21 at 41:13-15.)  Sargent Eggleston also testified that Officer Farman had a rifle (Williams Decl. Ex. 8 at 37:1-3), Plaintiff confirms that "one of [the Defendants] had a long barrel gun" (Id. Ex. 1 at 112:12), and there is no evidence that would

allow the Court to infer that one of the officers holding handcuffs was also somehow able to hold a rifle.

Neither has the Plaintiff submitted other evidence that the events unfolded as he alleges. Although he alleges his wife (FAC ¶ 14), "some of his friends" (Culumber Decl. Ex. 20 at 7), and "many of his neighbors" (Id. at 8) witnessed his arrest, there are no witness declarations that support his version of events. (See Williams Decl. Exs. 1-17; Culumber Decl. Ex. 25.) On this record, the Court does not find sufficient probative evidence to support Plaintiff's claims. O.S.C. Corp., 792 F.2d at 1466-67.

### III. Excessive Force

Moreover, even assuming Plaintiff could support his claims, the Court finds the Defendants are entitled to qualified immunity. "For qualified immunity, we determine whether the facts show that (1) the officer's conduct violated a constitutional right; and (2) the right which was violated was clearly established at the time of the violation." Espinosa v. City & Cty. of San Francisco, 598 F.3d 528, 532 (9th Cir. 2010).

Under the Fourth Amendment, the amount of force used must be "objectively reasonable under the circumstances." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). In making this determination, the Court must evaluate (1) the type and amount of force used; (2) the need for force based on the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to flee; and (3) must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." Id. at 1056-57.

The Court analyzes whether the Defendants are entitled to qualified immunity based on Plaintiff's allegations that three to four officers pointed guns at him when he exited his house and one officer continued to point a gun at Plaintiff while he was being handcuffed. (Williams Decl. Ex. 1 at 110:13-112:19; FAC at ¶ 17.) "[P]ointing a loaded gun at a suspect, employing the threat of deadly force, is use of a high level of force." Espinosa, 598 F.3d at 537. At first blush, this level of force appears excessive when weighed against several of the other Graham factors. 490 U.S. at 396. Plaintiff was suspected of violating RCW 9.41.270, a gross misdemeanor, not a felony. (Culumber Decl. Ex. 6 at 16:06:19.) He was cooperative and did not resist arrest (Williams Decl. Ex. 7 at 20:1-10), five officers were involved and only one arrestee (Culumber Decl. Ex. 6 at 15:55:46-16:14:02), the arrest took place in the middle of the day (Id.), and the officers had 15 to 30 minutes to plan the arrest while waiting for Plaintiff to emerge from his house (Id.).

But of all the factors the Court must consider, the "most important" one is "whether the suspect posed an immediate threat to the safety of the officers or others." S.B. v. Cty. of San Diego, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal citations omitted). Here, the officers knew Plaintiff had recently pointed his gun at a neighbor (Williams Decl., Ex. 6 at 2; Ex. 8 at 36:14-18), the officers had not secured Plaintiff's gun (Culumber Decl. Ex. 15 at 2-3), and while the officers expected Plaintiff to "come outside with his hands empty" (Culumber Decl. Ex. 15 at 2), he instead had a black wallet in his hand, permitting a reasonable officer to assume he would not be compliant with further commands (Id. at 3; Ex. 1 at 68:20-23).

Further, the officers aimed their weapons at Plaintiff only until he was handcuffed and patted down, the point at which the officers knew Plaintiff no longer had access to his weapon. (Culumber Decl. Ex. 15 at 2.) This situation is distinguishable from cases where the plaintiff had

earlier been armed with a gun that he "clearly no longer carried," <u>Robinson v. Solano County</u>, 278 F.3d 1007, 1014 (9th Cir. 2002), or situations where the officers knew the weapon was out of reach, <u>Thompson v. Rahr</u>, 885 F.3d 582, 585-87 (9th Cir. 2018). Because reasonable officers in this case could have ascertained an immediate threat to their safety in light of the available facts, and because the officers' use of force lasted only as long as reasonably necessary to ensure their safety, there was no constitutional violation. <u>Davis v. City of Seattle</u>, No. C13-0895JLR, 2014 WL 3810574, at *8 (W.D. Wash. Aug. 1, 2014).

Further, Plaintiff has not satisfied his burden of demonstrating that "every reasonable official would have understood" pointing weapons at a potentially armed suspect violated a "clearly established" right. <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011); <u>Espinosa</u>, 598 F.3d at 532. Even if Plaintiff did not pose an immediate threat to officer safety, it is entirely possible that a reasonable officer would think he did. <u>Davis</u>, 2014 WL 3810574 at *9. For these reasons, Defendants are entitled to qualified immunity.

## Conclusion

Because the Plaintiff has not submitted sufficient probative evidence to support his claim and also because the Defendants are entitled to qualified immunity, the Court GRANTS Defendants' Motion for Summary Judgment.


The clerk is ordered to provide copies of this order to all counsel.

Dated June 14, 2019.



Marsha J. Pechman
United States District Judge